**Affirmed and Memorandum Opinion filed February 24, 2022.**



In The

# Fourteenth Court of Appeals

## NO. 14-20-00396-CV

### ASCEND NATIONAL, LLC, Appellant

### V.

### STEVE LUDDERS, Appellee

**On Appeal from the 151st District Court**
**Harris County, Texas**
**Trial Court Cause No. 2019-83833**

## M E M O R A N D U M   O P I N I O N

Ascend National, LLC appeals an order granting Steve Ludders's special appearance and dismissing Ascend's claims. We conclude that: (1) Ludders is not subject to personal jurisdiction in Texas under general jurisdiction principles; (2) as to certain claims, Ascend failed to plead sufficient facts establishing that Ludders is subject to personal jurisdiction under specific jurisdiction principles; and (3) the trial court did not err in impliedly finding that Ludders did not have

sufficient minimum contacts to confer specific jurisdiction over Ludders for the remaining claims. Accordingly, we affirm.

## Background

Ascend was a healthcare staffing company located in Houston. Chris Eales, who lives in Georgia, owns Premier Healthcare Professionals, Inc. ("PHP") and entered into negotiations to acquire Ascend.

In November 2018, Eales signed a nondisclosure and non-solicitation agreement with Ascend. Eales agreed to maintain the confidentiality of Ascend's commercially valuable information and to not utilize any confidential information for his own benefit. The contracting parties also agreed that the contract and each party's obligations "shall be binding on the representatives, assigns, and successors of such party."

Steve Ludders, a friend of Eales, runs a medical staffing business in Florida. At Eales's request, Ludders provided advice regarding the proposed acquisition, including joining Eales during a one-day trip to Texas in January 2019 to meet with Ascend's representatives. According to Ascend, Ludders was not only Eales's friend but also his business partner and was provided total access to Ascend's books, records, client files, and personnel.

Ascend and Eales were unable to reach an agreement for the acquisition. According to Ascend, following the failed deal Ludders hired one of Ascend's employees, Linda Stafford-Haynes, "using the information gathered during the alleged due diligence phase and took over all the business that rightfully belonged to Ascend in violation of the nondisclosure agreement and numerous laws of the state of Texas." Ludders presented evidence that Ascend "shut down" its Houston office because of lack of profit and told Stafford-Haynes to "set up a new LLC

asap and arrange other alternative financing for any venture [she] may choose to entail." Ludders avers that Stafford-Haynes approached him on her own accord only after Ascend advised her to find new work and authorized her to assume control over client files.

Ascend sued Eales, PHP, and Ludders, asserting claims for fraud, breach of contract, tortious interference, conspiracy, and breach of fiduciary duty. Ascend's general theory was that the defendants "utilized the ruse of a proposed purchase to steal Linda Stafford-Haynes and all the clientele and business associated with her without paying Ascend any money for such rights." Ascend alleged that, "[a]t all times during the investigative process, Ludders was acting as an agent, partner, and coconspirator of Eales" and that "under Texas law their agreement created a partnership making both personally liable to Plaintiff." Ascend generally alleged that the trial court has "both specific and general jurisdiction over each of the Defendants because the suit arises from each of the Defendants' specific contacts which related directly to this litigation and the Defendants have maintained and do still maintain continuous and systematic contacts with the state of Texas."

Ludders filed a special appearance and attached an affidavit, in which he averred that he is a resident of Florida, that he owns no property in Texas, and that he is not a business partner with Eales or an agent of PHP. Ludders stated that his only visit to Texas occurred in January 2019 "to meet each of [Ascend's] branch managers," which lasted approximately three or four hours. During that visit, Ludders received no documentation or material relevant to Ascend's business. All other "correspondence and due diligence . . . happened remotely" outside of Texas. Ludders urged in his special appearance that he was not "at home" in Texas and therefore no Texas court could exercise general jurisdiction over him. Ludders also contended that his sole Texas contact—the January 2019 visit—was not

3

substantially related to the operative facts of the litigation and that any other allegedly tortious conduct occurred outside of Texas. Finally, Ludders stated in his affidavit that, after Ascend advised Stafford-Haynes to find new work, she called Ludders while he was in Florida to ask his assistance in starting her "own medical staffing business." Ludders agreed to help Stafford-Haynes only after she and Ascend signed a mutual release.

Ascend filed a response to Ludders's special appearance. Ascend contended that Ludders visited Texas to conduct due diligence for the proposed acquisition, sent numerous requests for proprietary information into Texas, received and reviewed hundreds of documents sent from Texas, and conducted and operated an ongoing business in Texas. Ascend submitted an affidavit from its managing member, Tony Brown, who testified that, at the 2019 meeting in Texas, Ludders "met with and asked for information from [Brown's] managers, [Brown], and staff." Brown also stated that he "[had] been told and believe[d] Ludders has hired and acquired the business of Linda Stafford-Haynes in Texas." Ascend also attached evidence showing that Ludders requested access to certain documents stored online.

The trial court granted Ludders's special appearance and dismissed all claims asserted by Ascend against Ludders for lack of personal jurisdiction, with prejudice as to refiling in Texas and without prejudice as to refiling in a state of proper jurisdiction.

Ascend timely appealed, challenging in a single issue the court's order granting Ludders's special appearance and dismissing Ascend's claims against Ludders.[1]

## Analysis

### A.  Personal jurisdiction framework and standard of review

Texas courts may assert in personam jurisdiction over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007).  The Texas long-arm statute authorizes Texas courts to exercise jurisdiction over a nonresident defendant who "does business" in the state. *See* Tex. Civ. Prac. & Rem. Code §§ 17.042, 17.043.  The legislature has described a non-exclusive list of acts that may constitute "doing business" in this state, such as: contracting with a Texas resident and either party is to perform the contract in whole or in part in Texas; or committing a tort in whole or in part in Texas. *See id.* § 17.042(1), (2).  In its response to Ludders's special appearance, Ascend argued generally that Ludders conducts and operates "ongoing businesses" within Texas, but it did not cite any particular provision of section 17.042.

The exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees when (1) the nonresident defendant has minimum contacts with the forum state and (2) the assertion of jurisdiction complies with traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Peters v. Top Gun Exec. Grp.*, 396 S.W.3d 57, 62 (Tex. App.—

---

[1] The trial court also granted Eales's special appearance and dismissed Ascend's claims against Eales.  In Eales's special appearance, he contended that PHP had not been served in this suit.

5

Houston [14th Dist.] 2013, no pet.). Minimum contacts are sufficient for personal jurisdiction when the nonresident defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *M&F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co.*, 512 S.W.3d 878, 886 (Tex. 2017). A nonresident defendant's purposeful contacts with a forum state can give rise to either general or specific jurisdiction, *id.* at 885, and Ascend contends the court has jurisdiction over Ludders under both theories.

General jurisdiction allows the forum to exercise personal jurisdiction over the defendant even if the claim does not arise from or relate to the defendant's activities within the state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984); *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex. 1991). As to an individual, rather than corporate, defendant, the paradigm forum for the exercise of general jurisdiction is the individual's domicile.[2] *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). An individual may have multiple residences but only one domicile. *See Chow v. Rodriguez San Pedro*, No. 14-18-00429-CV, 2019 WL 4021908, at *6 (Tex. App.—Houston [14th Dist.] Aug. 27, 2019, pet. denied) (mem. op.).

Specific jurisdiction generally exists if the defendant's alleged liability arises out of or is related to his purposeful activity conducted within the forum. *See Moki Mac*, 221 S.W.3d at 576. Thus, in analyzing specific jurisdiction, we evaluate the defendant's purposeful contacts in addition to the relationship among the defendant, the forum, and the particular litigation at hand. *See M&F Worldwide*,

---

[2] A court may exercise general jurisdiction over a nonresident corporation whose contacts with the forum state are so continuous and systematic as to render the corporation "essentially at home" in the forum state. *See Daimler AG v. Bauman*, 571 U.S. 117, 127, 139 (2014); *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 565 (Tex. 2018).

512 S.W.3d at 886; *Spir Star AG v. Kimich*, 310 S.W.3d 868, 873 (Tex. 2010); *Moki Mac*, 221 S.W.3d at 575-76. The Supreme Court of Texas has stated that specific jurisdiction arises when: (1) the nonresident creates minimum contacts with Texas by purposefully availing himself of the privilege of conducting activities here; and (2) a substantial connection exists between those purposeful contacts and the operative facts of the litigation. *Moki Mac*, 221 S.W.3d at 575-76, 585. If both of these circumstances are satisfied, then a Texas court may exercise personal jurisdiction over a nonresident defendant so long as doing so comports with traditional notions of fair play and substantial justice. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010).

In a challenge to personal jurisdiction, the plaintiff and the defendant bear shifting burdens of proof. *Id.* at 658. The plaintiff bears the initial burden of pleading sufficient facts to bring a nonresident defendant within the reach of the Texas long-arm statute. *Id.*; *see also* Tex. Civ. Prac. & Rem. Code § 17.042; *Perna v. Hogan*, 162 S.W.3d 648, 653 (Tex. App.—Houston [14th Dist.] 2005, no pet.). If the plaintiff fails to plead facts bringing the defendant within reach of the Texas long-arm statute, the defendant need only prove that he does not live in Texas to negate jurisdiction. *Kelly*, 301 S.W.3d at 658.

If the plaintiff meets its initial burden, the burden then shifts to the defendant to negate all bases of personal jurisdiction alleged by the plaintiff. *Id.* "Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading." *Id.* A defendant can negate jurisdiction on either a factual or a legal basis. *Id.* at 659. "Factually, the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations." *Id.* Or the defendant can show that even if the plaintiff's alleged facts are true, the

7

evidence is legally insufficient to establish jurisdiction. *Id.* If the defendant meets his burden of negating all alleged bases of personal jurisdiction, then the plaintiff must respond with evidence "establishing the requisite link with Texas." *Id.* at 660.

We review de novo a trial court's decision regarding a special appearance. *See M&F Worldwide*, 512 S.W.3d at 885. When, as here, the trial court does not issue findings of fact and conclusions of law, we imply all relevant facts necessary to support the judgment that are supported by evidence. *Id.* The trial court's factual findings supporting its ruling on the special appearance may be challenged for legal and factual sufficiency. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).

When examining a legal sufficiency challenge, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable fact finder could, and disregard contrary evidence unless a reasonable fact finder could not. *Id.* at 827. The evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the verdict under review. *Id.* The fact finder is the sole judge of witness credibility and the weight to give their testimony. *See id.* at 819.

In a factual sufficiency review, we consider and weigh all the evidence, both supporting and contradicting the finding. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406-07 (Tex. 1998). We set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* at 407. We may not substitute our own judgment for that of the trier of fact or pass upon the credibility of the witnesses. *Id.* The amount of evidence necessary to

affirm a judgment is far less than that necessary to reverse a judgment. *Yeng v. Zou*, 407 S.W.3d 485, 489 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

## B.    Application

### 1. *General jurisdiction*

We first consider whether a Texas court has personal jurisdiction over Ludders under general jurisdiction principles.

Ludders's domicile is the paradigm forum. *See Bauman*, 571 U.S. at 137. This court has presumed, without deciding, that in an exceptional case an individual defendant's contacts with a forum state other than the state of the individual's domicile may be so substantial and of such a nature as to make the individual "essentially at home" in that forum state. *See Yahsi v. Visor Muhendislik Insaat Turizm Gida Ve Mekanik Taahhut Ticaret Ltd. Sirketi*, ---S.W.3d---, 2021 WL 3672801, at *8 (Tex. App.—Houston [14th Dist.] Aug. 19, 2021, no pet.) (citing *Bauman*, 571 U.S. at 139 n.19 (allowing for such an exceptional case for a corporate defendant)).

There is no dispute that Ludders lives in Florida. Nevertheless, according to Ascend, Ludders in his affidavit "admitted that he has acquired and is operating Ascend's operations in Texas," which should amount to continuous and systematic business contacts in Texas sufficient to subject Ludders to general jurisdiction. But Ludders's affidavit merely states that he "agreed to help" Stafford-Haynes start her own medical staffing business, not that Ludders is running Ascend's business in Texas. By establishing his domicile in Florida, Ludders negated Ascend's allegation of general jurisdiction. Ascend failed to respond with evidence establishing the requisite link with Texas. We conclude that legally and factually sufficient evidence exists to support the trial court's implied finding that (1) Texas

is not Ludders's domicile or (2) Ludders's business contacts were not so continuous and systematic as to render him "essentially at home" in Texas. *See, e.g.*, *id.* at \*9 (insufficient evidence to support exercise of general jurisdiction over nonresident individual defendant).

The trial court did not err to the extent it impliedly concluded that Ludders was not subject to general jurisdiction in Texas.

2. *Specific jurisdiction*

We next consider whether the trial court may exercise personal jurisdiction over Ludders under specific jurisdiction principles.

Specific jurisdiction requires us to analyze jurisdictional contacts on a claim-by-claim basis, *Kelly*, 301 S.W.3d at 660, unless all claims arise from the same forum contacts, *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150-51 (Tex. 2013). Here, there are several instances of alleged forum contacts: (1) the nondisclosure agreement; (2) the 2019 visit; (3) Ludders's requests for, and receipt of, information from Ascend in Texas; and (4) the operation of a competing business.

Viewed in isolation, some of these contacts cannot support the exercise of jurisdiction over Ludders, such as the nondisclosure agreement signed by Ascend and Eales (but not by Ludders). Ascend suggests that these individual contacts should be viewed as a single, "overarching transaction" such as the one addressed in *Cornerstone Healthcare Group Holding, Inc. v. Nautic Management VI, L.P.*, 493 S.W.3d 65 (Tex. 2016). In *Cornerstone*, three nonresident private-equity funds and their general partner invested in a newly created Texas subsidiary for the purpose of purchasing a chain of Texas hospitals from a Texas company. *Id.* at 67. Although there was no argument the funds and subsidiaries failed to maintain their

legal separateness, the supreme court stated that all events were part of "one overarching transaction," in which the funds created new subsidiaries to complete the transaction that they set in motion. *Id.* at 72-73. In the lawsuit, the plaintiff sought to "trace the purchase of Texas assets to the entities that spearheaded and directed the transaction, and ultimately stood to profit from it." *Id.* at 73. Because the defendants "specifically sought both a Texas seller and Texas assets," the court concluded the contacts with Texas were purposeful and those parties impliedly consented to suit in Texas.

We disagree that *Cornerstone* controls. There is no suggestion that Ludders was initially involved in Eales's proposed purchase of Ascend or that Ludders directed or spearheaded Eales's negotiations with Ascend. Nor was Ludders party to the nondisclosure agreement, the significance of which we discuss more below. Thus, the factual scenario in *Cornerstone*—a nonresident creating a subsidiary specifically to complete a transaction in Texas—is not present here. We cannot say that the contacts on which Ascend relies are necessarily part of a single, overarching transaction involving Ludders (as opposed to Eales, Premier Healthcare, or Stafford-Haynes).

Ascend offers another theory by which we can and should impute all forum contacts to Ludders, whether he personally engaged in the conduct or not: agency. Ascend alleged that Ludders was at all times Eales's partner, representative, and agent and thus, all of Eales's actions were effectively Ludders's actions as well. For his part, Ludders specifically denied being business partners with Eales or an agent or principal of Premier Healthcare and stated that he and Eales have "wholly independent businesses." Ascend's "vague allegation of an agency relationship" between Ludders and Eales—especially when coupled with Ludders's denial of partnership, which the trial court could have credited—"is insufficient to support

11

an assertion of personal jurisdiction" over Ludders based on Eales's conduct. *Kumar v. Hill*, No. 01-06-00045-CV, 2007 WL 495512, at \*5 (Tex. App.—Houston [1st Dist.] Feb. 15, 2007, no pet.) (mem. op.).

Having rejected Ascend's requests that we consider the jurisdictional contacts as a single transaction and that we impute Eales's actions to Ludders, we turn our inquiry to whether Ludders himself purposefully availed himself of the privilege of doing business in Texas, such that exercising personal jurisdiction over him would comport with due process. Specific jurisdiction will exist if a substantial connection exists between Ludders's purposeful contacts and the operative facts. *See Moki Mac*, 221 S.W.3d at 575-76, 585.

a. Fraud

The Texas long-arm statute authorizes Texas courts to exercise jurisdiction over a nonresident defendant who commits a tort in whole or in part in Texas. *See* Tex. Civ. Prac. & Rem. Code § 17.042(2). Ascend alleges that Ludders made willful and material misrepresentations by "expressly stat[ing] that [he] would keep private and not utilize any of the information learned during the investigation of Ascend." But there is no allegation or evidence regarding when Ludders made these representations or, more pertinently, *where* Ludders made the representations. Thus, the January 2019 meeting cannot be a jurisdictional contact for purposes of the fraud claim because there is no allegation or evidence establishing that Ludders made the alleged misrepresentation during that meeting. And we cannot look to the nondisclosure agreement because, as discussed in the next section, Ludders was not a party or signatory to that contract. Accordingly, Ascend failed to plead sufficient allegations to bring Ludders within the provisions of the Texas long-arm statute with respect to Ascend's fraud claim. *See Steward Health Care Sys. LLC v. Saidara*, 633 S.W.3d 120, 131 (Tex. App.—Dallas 2021,

12

no pet.) (en banc) (no exercise of specific jurisdiction when plaintiff did not allege that nonresident was in Texas when he made misrepresentations in electronic and telephonic communications, and plaintiff did not allege that nonresident made an in-person misrepresentation during visit to Texas).

To the extent that Ludders misrepresented an intention to maintain the confidentiality of Ascend's proprietary information, as alleged, and he did so by email or telephone while in Florida, courts have repeatedly held that such communications are insufficient to confer specific jurisdiction. *See, e.g.*, *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 791 (Tex. 2005) ("[C]hanges in technology have made reliance on phone calls obsolete as proof of purposeful availment."); *see also Olympia Capital Assocs., L.P. v. Jackson*, 247 S.W.3d 399, 417-18 (Tex. App.—Dallas 2008, no pet.) (email and phone communications outside of jurisdiction regarding negotiation and performance of contract are insufficient forum contacts).

b. Breach of contract

The purported forum contact for Ascend's breach of contract claim is the nondisclosure agreement, signed by Eales and Brown on behalf of Premier Healthcare and Ascend, respectively. Nothing in the agreement indicates where the contract was executed or where it was to be performed. More importantly, Ludders is not a party or signatory to the nondisclosure agreement, and therefore the contract cannot support an assertion of personal jurisdiction over Ludders. *See Munz v. Schreiber*, No. 14-17-00687-CV, 2019 WL 1768590, at *7 (Tex. App.— Houston [14th Dist.] Apr. 23, 2019, no pet.) (mem. op.). Further, even if Eales's assent to the contract could be imputed to Ludders, merely entering into a contract with a Texas resident does not satisfy the minimum contacts requirement. *See Star Motors, LLC v. Motorwerks Vehicle Sales LLC*, No. 14-18-00763-CV, 2019 WL

2385755, at *4 (Tex. App.—Houston [14th Dist.] June 6, 2019, pet. denied) (mem. op.); *Olympia Capital Assocs.*, 247 S.W.3d at 417 ("[M]erely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction.").

### c. Tortious interference

Ascend generally alleges that Ludders utilized "proprietary information surreptitiously stolen from Ascend" to steal Ascend's clients and to hire Linda Stafford-Haynes. As to Ascend's clients, Ascend does not identify a single client and there is no allegation or evidence that Ascend's (unidentified) clients were in Texas. Ascend failed to plead sufficient facts to confer specific jurisdiction over Ludders for Ascend's tortious interference claim to the extent it is based upon interference with Ascend's clients. *See, e.g.*, *Kelly*, 301 S.W.3d at 660 (plaintiff failed to plead sufficient jurisdictional facts when there was no allegation that wrongdoing occurred in Texas).

As to Ludders's alleged hiring of Stafford-Haynes, there is some evidence that she worked in Texas. However, Ludders submitted evidence that Stafford-Haynes unilaterally reached out to Ludders in Florida and that Ludders agreed to help her start "her own medical staffing business," presumably in Texas. From this, the trial court could have found that Ludders never contacted Stafford-Haynes in Texas for the purpose of hiring her and that Ludders is not doing business in Texas through Stafford-Haynes's company. *See Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002) (presuming that trial court in special appearance resolved all disputed facts in favor of judgment); *see also Moki Mac*, 221 S.W.3d at 575 ("[O]nly the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person."). Thus, there is legally and factually sufficient evidence to support the trial court's implied finding

14

that Ludders did not have sufficient minimum contacts for Ascend's tortious interference claim based upon interference with Ascend's contract or business relationship with Stafford-Haynes.

### d. Conspiracy and fiduciary duty

Ascend alleges that Ludders, individually and conspiring with Eales, stole proprietary commercially valuable information from Ascend and then utilized that information for Ludders's personal benefit.

Brown's affidavit provides that Ludders asked for information from Ascend during the January 2019 meeting, "[s]uch information was proprietary and confidential," and "[s]uch information was provided to [Ludders] both while [he was] in Texas" and after returning home to Florida. There is no detail or specification regarding the nature or content of the information provided during the Texas meeting, other than it was "proprietary and confidential." Ludders, in his affidavit, testified that he "did not receive any documentation or obtain any material relevant to Ascend National LLC's business during [the Texas] visit," and that all other correspondence and due diligence happened remotely in Florida or Georgia. The trial court could have resolved this factual dispute and found that Ludders obtained any such proprietary and confidential information when not in Texas. *See Coleman*, 83 S.W.3d at 806 (resolving factual dispute in favor of judgment); *see also Michiana Easy Livin' Country*, 168 S.W.3d at 791; *Olympia Capital Assocs.*, 247 S.W.3d at 417-18 (electronic communication from outside jurisdiction insufficient to confer personal jurisdiction). Further, to the extent that Ascend's claims are premised on the factual theory that Ludders misappropriated Ascend's confidential information by forming a competing business with Stafford-Haynes, we have already explained that the trial court could have found from the evidence that Ludders did not do so. *See supra* Part B.2.c. Accordingly, there is

15

legally and factually sufficient evidence to support the trial court's implied finding that Ludders did not have sufficient minimum contacts in Texas to confer specific jurisdiction for Ascend's breach of fiduciary duty claim and related conspiracy theory.

\*     \*     \*

Viewing the pleadings and the evidence under the applicable standards of review, we conclude that the trial court did not err in deciding that Ludders lacked sufficient minimum contacts with Texas to allow for the exercise of specific personal jurisdiction consistent with due process for any of Ascend's claims. We have already held that the court could not have exercised general jurisdiction over Ludders, and there is no other ground to reverse the trial court's ruling. We overrule Ascend's sole appellate issue.[3]

## Conclusion

We affirm the trial court's judgment dismissing Ascend's claims against Ludders for lack of personal jurisdiction.


/s/     Kevin Jewell
         Justice



Panel consists of Justices Jewell, Bourliot, and Poissant.

---

[3] Because we decide this case based on the lack of alleged minimum contacts with Texas, we do not discuss the fair-play-and-substantial-justice prong of personal jurisdiction. *See Kelly*, 301 S.W.3d at 661 n.10.